UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JOLENE CLARK, | ) | No. CV 06-00278-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR"). After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed and the matter remanded for further proceedings.

1        Plaintiff's single issue is that the Administrative Law Judge
2   ("ALJ") failed to properly assess the opinion of her treating
3   physician, Dr. Lee.  The Court agrees, and finds the error to be
4   significant enough to merit remand, for reasons to be set forth in
5   this Opinion.
6        There is no dispute that Dr. Lee, associated with the Prairie
7   Medical Group, was Plaintiff's primary care physician until
8   approximately November 2003.  On April 23, 2002, he provided a
9   "Medical Provider Evaluation," which assessed Plaintiff as temporarily
10  disabled until July 15, 2002, based on cardiomyopathy, chronic
11  obstructive pulmonary disease ("COPD"), and congestive heart failure.
12  (AR 245.)  Dr. Lee's opinion changed significantly with regard to
13  Plaintiff's exertional ability, as reflected in a "Physical Residual
14  Functional Capacity Questionnaire" he completed on November 17, 2003.
15  In that questionnaire, Dr. Lee noted that he began seeing Plaintiff
16  regularly in approximately December 2001, at a frequency of every one
17  to two months.  He now diagnosed as a primary condition rheumatoid
18  arthritis, in addition to COPD, but also added interstitial lung
19  disease, hyperlipidemia, obesity, and stress anxiety. (AR 427.)  He
20  listed symptoms of back and knee pains, fatigue, decreased endurance,
21  and trouble breathing. (_Id_.)  He described daily pains in the knees,
22  back, hips, and "basically everywhere."  He noted that standing,
23  walking or sitting too long would aggravate the conditions, as would
24  stress.  He noted that Plaintiff was under several medications which
25  had side effects.  Vicodin caused drowsiness, Prednisone had caused
26  increased weight and swelling, in addition to other side effects. (AR
27  428.)  He described her impairments as expected to last at least 12
28  months, and stated that Plaintiff was not a malingerer.  He indicated

that Plaintiff's experience of pain and other symptoms was severe enough to interfere with her attention and concentration from frequently to constantly. (Id.) He noted a marked limitation in her ability to deal with work stress. He stated she could walk one-quarter block without rest, that she could continuously sit and stand for a period of five minutes, and that she was only able to sit and stand or walk less than two hours in an eight-hour workday. (AR 429.) He assessed a need to take unscheduled breaks during an eight-hour working day, which would occur three to five times per day or more. He indicated she would have to rest before returning to work for 10 to 15 minutes. With prolonged sitting, he stated, Plaintiff's legs would need to be elevated higher than her waist. If she worked in a sedentary job, this elevation would have to occur on a continuous basis. She would at times require use of a cane or other assistive device. She could occasionally lift less than 10 pounds, and she would have significant limitations in doing repetitive reaching, handling and fingering. (AR 430.) She would have no ability during a working day to do certain manipulative activities with her hands or fingers. (Id.) She would not be able to bend or twist. Because of her impairments, she would likely be absent from work more than three times a month. (AR 431.)

Dr. Lee's 2003 assessment was rejected in its entirety by the ALJ in her Decision. (AR 25-26.) It is the propriety of the ALJ's rejection of Dr. Lee's opinion which is the focus of this Court's decision. For the reasons set forth below, the Court determines that the ALJ improperly rejected Dr. Lee's opinion.

The first reason stated by the ALJ was that Dr. Lee had failed to provide any new objective data which would serve to distinguish his

1  2002 opinion from the one he rendered in 2003. (AR 25.)  The record
2  does not support that conclusion at all.  In fact, a careful review of
3  the treating records indicates that Dr. Lee first noted a condition
4  which would be consistent with rheumatoid arthritis in May 2002.  In
5  August 2002, Dr. Lee referred Plaintiff to Dr. Kades for a
6  rheumatology consultation. (AR 353.)  The chart notes completed by Dr.
7  Kades indicate recent onset of an arthritic condition.  There was
8  pain, tenderness, and swelling in multiple joints and Dr. Kades
9  diagnosed inflammatory polyarthritis R/O SLE. (Id.)  Laboratory tests
10 completed contemporaneously revealed an elevated rheumatoid factor of
11 48. (AR 345.)

12    Plaintiff returned to Dr. Kades several months later, on October
13 8, 2002, at which time Dr. Kades again noted a positive rheumatoid
14 factor and diagnosis of inflammatory arthritis, but he also noted that
15 this finding might be partially masked by Plaintiff's Prednisone use.
16 (AR 336.)

17    Dr. Lee referred Plaintiff on May 9, 2003 to Dr. Yu for a
18 rheumatology consultation. (AR 408-409.)  Dr. Yu's examination of
19 Plaintiff's musculoskeletal system is set forth in the following
20 portion of his report, verbatim:

21       "Patient walks with an antagic gait with pain in the
22    knees and the ankles.  She has pain when she stands on her
23    tip toes but she can stand on her heels.  She has difficulty
24    in doing a deep knee bend.  C-spine has decrease in
25    extension and also right lateral rotation.  There is a
26    limitation of range of motion of the right shoulder when she
27    does it actively; however, this is because of pain and is
28    normal when its being passively. [sic]  Examination of the

4

      joints of the hands, wrists, elbows, feet, ankles, knees show surprisingly no inflammatory swelling. Right knee has loss of 20 degrees of full flexion and left knee shows crepitation."

(AR 408.)

Dr. Yu's evaluation and findings are clearly not as benign as the Commissioner's summary at p. 17 of the JS.

Plaintiff was again examined by Dr. Yu in June 2003 (AR 410), at which time Dr. Yu diagnosed inflammatory arthritis and probable rheumatoid arthritis. In July 2003, Dr. Yu noted joint swelling and this time diagnosed rheumatoid arthritis. (AR 410.)

Based on these objective tests, there is no logic to the ALJ's or the Commissioner's claim that Dr. Lee's 2003 report is not based on objective testing, but rather, rests on Plaintiff's subjective complaints. Nor is there any support for the ALJ's conclusion that there is a lack of evidence after 2002 which would substantiate Dr. Lee's 2003 conclusions.

The ALJ also relied upon an internal medicine consultative evaluation ("CE") dated June 19, 2002, performed by Dr. Karamlou at the request of the Department of Social Services. (AR 25, 302-306.) While the Commissioner largely rests her argument on law which would permit an ALJ to accept a contrary opinion of a non-treating but examining physician if specific and legitimate reasons are offered, that application of law has absolutely no place in this case. First, Dr. Karamlou is not a rheumatologist, nor die he perform an examination which focused on the rheumatoid arthritis issues which were beginning to develop at about the time of his examination. The

5

ALJ apparently recognized this in her Decision (AR 25), but then proceeded to ignore the import of her own statements. The second reason why Dr. Karamlou's findings are almost irrelevant is that his examination predated the onset of Plaintiff's rheumatoid condition, which appears to have increased in severity after the examination, as reflected by the reports of the specialists who examined Plaintiff at Dr. Lee's request. For the same reason, the opinion of the State Agency Physician, Dr. Beig, is deemed irrelevant, because it is based on untimely medical evidence which did not evaluate Plaintiff's rheumatoid condition.

Finally, the question of side effects of Plaintiff's medications must be considered. There is evidence in the record that by taking Prednisone, Plaintiff may have masked the swelling from her rheumatoid condition, which in turn, would have decreased any functional limitations she might have experienced as a result of this impairment. But it is also clear, as Dr. Lee reported, and as Plaintiff testified at the hearing, that the Prednisone had serious side effects of severe weight gain. (See AR at 428, 619.)

Because the ALJ failed to set forth a single legitimate reason to reject Dr. Lee's opinion, it will be credited on remand. See Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995), citing Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).

The Court has carefully considered the proper remedy in this case. Although Dr. Lee rendered an opinion regarding Plaintiff's functional limitations, which the Court has found to have objective support, the question of whether or not Plaintiff is disabled from employment is a legal issue, not one to be decided by a doctor. For that reason, the Court declines to award benefits, and will remand the

matter for a further hearing pursuant to the dictates of this Opinion.

For the reasons set forth in this Opinion, this matter will be remanded for further hearing.  The decision of the Commissioner is reversed.

**IT IS SO ORDERED.**

DATED: September 19, 2006

　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　VICTOR B. KENTON
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE